UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| PHILIP N. GEENEN, | ) | CIV.  07-5070-JLV |
| | ) | |
| Plaintiff, | ) | ORDER |
| | ) | GRANTING DEFENDANT'S |
| vs. | ) | MOTION FOR SUMMARY |
| | ) | JUDGMENT |
| KEN SALAZAR, Secretary of the | ) | |
| Interior, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Plaintiff filed his complaint (Docket 1) alleging he was denied a

transfer from the Department of Agriculture ("DOA") to a position of criminal

investigator with the Department of Interior ("DOI"), Bureau of Land

Management ("BLM"), because of his age in violation of the Age

Discrimination in Employment Act ("ADEA").  Defendant[1] initially filed a

Fed. R. Civ. P. 12(b)(6) motion asserting plaintiff's complaint failed to state a

claim upon which relief can be granted.  (Docket 7).  District Judge Richard

---

[1]Dirk Kempthorne was the Secretary of the DOI at the initiation of these proceedings. (Docket 15 #16).  He was sued in his official capacity.  (Docket 1 #18).  Mr. Salazar replaced Mr. Kempthorne as the Secretary of the DOI and is substituted as defendant pursuant to Fed. R. Civ. P. 25(d).  The court previously dismissed the complaint against other named individuals within DOI and BLM/Wyoming as the Secretary of the DOI is the real party in interest.  (Docket 34).  All future references will be to the singular  defendant.

H. Battey entered an order denying the defendant's motion to dismiss. (Docket 14). Defendant then filed an answer. (Docket 15). Following completion of discovery, defendant filed a motion for summary judgment. (Docket 58). Briefing by the parties is complete and the motion is ripe for resolution.

## FACTS AND PROCEDURAL HISTORY

The undisputed material facts are gathered from plaintiff's complaint (Docket 1), defendant's answer (Docket 15), defendant's statement of undisputed material facts (Docket 60), and plaintiff's response to defendant's statement of undisputed material facts (Docket 69). Wherever possible, references will be only to law enforcement officers ("LES") as that is the classification of employees relevant to this litigation even though the particular statute or regulation may also be pertinent to firefighters.

PLAINTIFF'S BLM/WYOMING EMPLOYMENT EFFORTS

Plaintiff Philip N. Geenen was age 59 at the time of the discrimination alleged in his complaint. (Dockets 1 #1 and 15 #1). Mr. Geenen began working for the DOA in 1989 in a law enforcement position. (Docket 60 #1).[2] At the time Mr. Geenen was first hired into a federal law enforcement position, he was 43 years old. (Docket 60 #2). He was originally employed

_____

[2]All statements of undisputed fact will reference defendant's statement of undisputed facts (Docket 60) which were admitted by plaintiff (Docket 69). If only partially admitted by plaintiff, both documents will be referenced.

by the DOA in 1988, but moved into the law enforcement position when that position opened in 1989.  (Docket 70-5, p. 2).

On August 15, 2005, plaintiff applied for Vacancy Announcement Number WY-Merit-2005-0207.  (Dockets 1 #3 and 15 #3).  The vacancy announcement from the DOI-BLM stated, "Open to current Federal employees serving under a career or career conditional appointment. . . ." Id.  The announcement provided:

> LAW ENFORCEMENT RETIRTMENT [sic]: This position is a primary law enforcement position under 5 U.S.C. 8336 (C) (CSRS) and 5 U.S.C. 8412 (D) (FERS).  Persons making their first entry into a law enforcement position under these authorities cannot be selected if over age 37.  Persons already in covered secondary positions or persons with previous approved service who apply for a primary position cannot be considered if their age at reentry into the primary position exceeds 37 years after subtracting their years of service in covered positions.  Applicant must provide evidence of current or previous coverage that would qualify.

(Docket 60 #7).  Section 8336(c) of Title 5, United States Code, relates to the civil service retirement system ("CSRS").[3]  Section 8412(d) of Title 5, United States Code, relates to the federal employees' retirement system

---

[3]That section of the CSRS provides:  (c)(1) An employee who is separated from the service after becoming 50 years of age and completing 20 years of service as a law enforcement officer . . . or any combination of such service totaling at least 20 years, is entitled to an annuity.

("FERS").[4]  The announcement indicated that candidates "must meet all qualifications and eligibility requirements[.]"  (Docket 60 #4).  The announcement declared that the position required a high level of "physical stamina and physical ability."  (Docket 60 #5).  The position was  subject to a maximum entry age ("MEA") of 37.  (Docket 60 #6).

Plaintiff's application, with all required information, was filed in a timely manner. (Dockets 1 #25 and 15 #17).  Mr. Geenen was notified he was among the most highly qualified applicants and his application packet was being forwarded to the selecting official for further consideration. (Dockets 1 #26 and 15 #17).

At the time of the application, plaintiff completed a computer generated questionnaire called the "Quick Hire."  (Docket 60 #8).  One of the screening questions on the Quick Hire was:

1.    I meet the mandatory age requirement for law enforcement
       positions because:

       1.    I am under 37 years of age.

       2.    I am 37 years or older, but I have prior
             Federal  Civilian  law  enforcement  or

_____

[4]That section of the FERS provides: (d) An employee who is separated from the service . . . (1) after completing 25 years of service as a law enforcement officer . . . , or any combination of such service totaling at least 25 years, or (2) after becoming 50 years of age and completing 20 years of service as a law enforcement officer . . . , or any combination of such service totaling at least 20 years, is entitled to an annuity.

4

> Federal firefighter experience covered by
> title 5 U.S.C. section 8336 © [sic] that
> when the years of service is subtracted
> from my current age I will be under 37
> years of age.

> 3.      None of the above.

(Docket 60 #9).  Plaintiff responded to this question by marking subsection

2.  (Docket 60 #10).  At the time of answering this question plaintiff's age

(59) minus his years of service (2005-1989 =16) resulted in an effective age

of 43. (59-16=43).  (Docket 60 #11).  At the time of his application, plaintiff

exceeded the MEA by 22 years.  (Docket 60 #12).

BLM/Wyoming informed plaintiff his application could not be

considered because he did not meet the MEA.  (Docket 60 #13).  After

receiving that information, plaintiff called BLM/Wyoming and spoke with

the selecting official, Special Agent in Charge Michael Miller, who informed

Mr. Geenen he did not qualify for the position based on the MEA

requirement and BLM/Wyoming did not grant waivers.  (Docket 60 #14).

The only reason ever given by BLM/Wyoming for Mr. Geenen's non-selection

was that he did not meet the MEA requirement.  (Docket 60 #17).

At the time of his application, plaintiff was a federal law enforcement

officer serving in a primary career position covered under the Special Law

Enforcement Training/Firefighter retirement within the DOA-Forest Service

("FS").  (Docket 15 #4).  Mr. Geenen claimed the MEA which was part of the

5

job announcement and job requirement did not apply to him because he had been grandfathered into a special retirement program for law enforcement officers at the DOA.  (Docket 60 #15).  Plaintiff  further asserted this 6c retirement program allowed him to work for 20 years with the federal government with any agency.[5]  (Docket 60 #16).

A much younger person, Greg Courter, was hired to fill the position. (Dockets 1 #29 and 15 #17; 70-7; Miller depo. p. 32:9-12).  Prior to this position Mr. Courter was a BLM ranger in New Mexico.  Id. (Miller depo. p. 33:4-5).

DEPARTMENT OF INTERIOR POLICY STATEMENTS

In 1995, the DOI issued a memorandum to its bureau heads who employed law enforcement officers.[6]  (Docket 59-9).  That memorandum from the Secretary's Designee for Special Retirement Programs provided:

Subject:  Maximum Entry Age

The [DOI] recognizes the need to maintain a young and vigorous workforce in physically arduous law enforcement officer . . . positions.  The purpose of this memorandum is to establish a Departmentwide [sic] maximum entry age to ensure that those positions are held by men and women who are physically capable of meeting the rigorous demands of law enforcement . . . activity.

---

[5]Referring to 5 U.S.C. § 8336(c).  See footnote #3, supra.

[6]Under 5 C.F.R. § 831.911 the Office of Personnel Management ("OPM") retained oversight of the agency's designation of a MEA under CSRS.  5 C.F.R. § 842.808 retained oversight by the OPM over the agency's designation of a MEA under FERS.

In conjunction with 5 U.S.C. 8336(c) and 5 U.S.C. 8412(d) regarding enhanced retirement for law enforcement officers . . . , the maximum entry age is 37 for law enforcement officers . . . . This coincides with the mandatory retirement age of 57 for law enforcement officers . . . .

Employees who are reassigned as a management directive into covered primary positions are allowed to exceed the maximum entry age, provided the employee meets the physical standards for primary or rigorous positions.  This is in effect only during each bureau's initial transition to benchmark or standardized law enforcement . . . primary positions.  Management must recognize that employees in this situation cannot be mandatorily retired until they attain 20 years in covered positions, provided they meet the physical standards.

Exceptions to the maximum entry age policy are allowed in rare situations involving especially qualified individuals and the unique needs of the bureau, or where documented skills shortages arise in specific . . . law enforcement positions.  Each bureau head is responsible for approving exceptions and for ensuring that documentation in each individual's Official Personnel File is maintained for each exception made.  This approval authority may be redelegated no lower than the bureau head of administration or appropriate headquarters official, as determined by the bureau head.

Id.

On February 11, 2002, DOI, through the Director of Personnel Policy ("DPP"), issued Personnel Bulletin 02-7 on the subject of Maximum Entry Age for Law Enforcement Officers and Firefighters and Waiver of Maximum Entry Age.  (Docket 59-6).  After referencing the Congressional policy of "employing a 'young and physically vigorous' workforce in all law enforcement . . .  positions that involve sufficiently rigorous duties. . . . ," this bulletin reiterated the MEA of 37 years of age, but clarified that:

7

> Individuals age 37 and over may reenter a primary law enforcement . . . position if they are able to complete a total of 20 years of covered and creditable law enforcement . . . service by the mandatory retirement age of 57. Prior service in covered positions may be subtracted from the applicant's age to determine if he or she meets the MEA. Such prior service must also be creditable for retirement. . . .

Id. This bulletin also established a provision for the use of waivers from these age limitations:

> Waivers
>
> The special retirement provisions were enacted because of the rigorous physical requirements of certain positions. Special retirement provides law enforcement officers . . . with an enhanced annuity at a younger age than under the regular retirement provisions.
>
> Waivers of the MEA are allowed only in the ram [sic] instance that an individual has unique experience and skills that are critical to the accomplishment of the mission. More than rare use of the waiver authority contradicts the need to maintain a young and vigorous workforce and erodes the theory behind the special retirement program. For this reason, the Director of Personnel Policy must concur with future waivers prior to their approval. Once approved by the bureau head, forward a copy of the waiver to [DPP] . . . . The Office of Personnel Policy will also obtain the concurrence of the Office of Law Enforcement and Security on law enforcement waivers . . . .

Id.

DOI's Personnelist: Recruitment was revised on May 3, 2002, to reflect the MEA provision. (Docket 59-10). This publication, in pertinent part, stated:

> Recruiting Statement for Primary FF/LEO Positions
> . . . .

8

Applicants NOT currently in a special retirement position, must not have reached their (37th birthday for . . . law enforcement positions) upon appointment to this position.  Those over the maximum entry age MAY be eligible for reentry into a primary . . . law enforcement position IF there is prior Federal service, creditable  toward retirement in covered law enforcement officer . . . positions, and the prior service is sufficient to permit retirement on, or before, the mandatory retirement age for these types of positions.  **ONLY SERVICE CREDITABLE TOWARD SPECIAL RETIREMENT MEETS THIS DEFINITION. (E.G., Permanent or Term service in a covered position . . . .).**
. . . .
The maximum entry age requirement does not apply to:

•      When filling a position not subject to either CSRS or FERS retirement;

•      To a DOI employee who moves directly from one rigorous law enforcement . . . position to another.

•      Secondary positions are not subject to MEA requirements.

☞ Employees in primary positions are subject to **MANDATORY SEPARATION** �one with:

•      20 years covered/creditable service and age 57 for . . . law enforcement positions.

Id. (capitalization and bold in original).  On November 18, 2002, DOI issued

Personnel Bulletin 03-3 on this same issue.  (Docket 59-5).  This bulletin

contained the same language as Personnel Bulletin 02-7.

OTHER BLM WAIVERS OF MEA

The BLM/Wyoming has the authority to request waivers of the MEA,

subject to ultimate approval by the Director of Personnel Policy and the

bureau head.  (Docket 69 #28).  Michael Miller has been the Special Agent in

Charge of BLM/Wyoming since February of 2001.  (Docket 60 #48).  Since
2001, BLM/Wyoming has never requested a waiver of the MEA.  (Docket 60
#49).

Plaintiff identified three BLM employees who he asserts experienced
circumstances similar to his situation.  The undisputed facts relating to
those individuals are as follows.

1.    James Moriarty

James Moriarty was initially hired by the DOA/FS in 1988.  (Docket
60 #31).  In 1995, he became a law enforcement officer at the age of 40.
(Docket 60 #32).  Mr. Moriarty was 50 years old when he was hired by
BLM/New Mexico from the DOA in 2006.  (Docket 60 #33).  He worked from
2006-2008 in BLM/New Mexico as a criminal investigator, a primary law
enforcement position, without a waiver of the MEA.  (Docket 60 #37).

In 2008, Mr. Moriarty applied for and was promoted to a supervisory
position, Supervisory Criminal Investigator.  (Docket 60 #34).  The
supervisory position held by Mr. Moriarty is a secondary position, not a
primary position like the one for which Mr. Geenen applied.  (Docket 60
#35).  The MEA does not apply to the secondary position held by Mr.
Moriarty since his appointment to a supervisory position in 2008.  (Docket
60 #36).

10

2.   <u>Rudy Maudlin</u>

Rudy Maudlin was hired by DOI in 1990.  (Docket 60 #38).  He was granted a retroactive MEA waiver by DOI pursuant to a request by BLM/Utah in 2008 in accordance with the 2002 Personnel Bulletins. (Docket 60 #39).  Mr. Maudlin was granted a waiver because his age at the time of his hiring in 1990 was 37 years and 6 months.  (Docket 60 #40). The position for which Mr. Maudlin was hired was not approved for primary law enforcement coverage.  (Docket 60 #41).  Mr. Maudlin was in the employ of DOI since 1990 and retired in 2010 at the age of 57.  (Docket 60 #42).

3.   <u>Nicholas LaFazio</u>

Nicholas LaFazio was granted a retroactive waiver of the MEA through BLM/California in March of 2007.  (Docket 60 #43).  At the time of his appointment, Mr. LaFazio was 37 years 3 months and 10 days old. (Docket 60 #44).  Mr. LaFazio was offered the position prior to his 37th birthday. (Dockets 60 #45 and 69 #45).  His background check was not completed before his 37th birthday.[7]  (Docket 60 #45).  Mr. LaFazio was employed by DOI at the time he was hired into the position he now holds with BLM/Wyoming.  (Docket 60 #46).  Mr. LaFazio's waiver request indicated it was difficult to recruit and retain officers for his position. (Docket 60 #47).

---

[7]Plaintiff asserts the waiver was granted to LaFazio because he exceeded the MEA when he was appointed to his law enforcement position. (Docket 69 #45).

11

PRE-LITIGATION REMEDIAL EFFORTS

Before initiating this lawsuit, plaintiff tried various remedies in an attempt to be considered for the position with BLM/Wyoming, including intervention by a United States Senator, filing an informal complaint with the Equal Employment Opportunity Commission ("EEOC") with the BLM, filing a formal Equal Employment Opportunity ("EEO") complaint with the DOI, and filing a formal EEO complaint with the EEOC. (Dockets 1 #28 and 15 #17). The EEOC administrative judge issued a decision adverse to Mr. Geenen. (Dockets 1 #31 and 15 #19). On September 29, 2005, Mr. Geenen filed an informal ADEA complaint with the BLM, which was denied. (Dockets 1 #8 and 15 #6). On December 9, 2005, Mr. Geenen filed a formal ADEA complaint against the DOI. (Dockets 1 #9 and 15 #7). The DOI received the complaint on January 3, 2006, and appointed investigator Joseph Urbano to conduct an investigation. Id. DOI denied relief. (Dockets 1 #15 and 15 #13).

## JURISDICTION AND VENUE

This case arises under the United States Constitution and presents a federal question under the ADEA of 1967, as amended, 29 U.S.C. § 623(a) *et seq.* and 28 U.S.C. §§ 1331, 1343(a)(3), and 1361. (Dockets 1 #14 and 15 #12). The parties acknowledge this case is properly venued in accordance with 28 U.S.C. § 2201(a). (Dockets 1 #16 and 15 #14). The court has

authority to grant declaratory relief pursuant to the Declaratory Judgment

Act, 28 U.S.C. § 2201 *et seq.*

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), a movant is entitled to summary judgment

if the movant can "show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(c)(2).  Once the moving party has met its burden, the nonmoving

party may not rest on the allegations or denials in the pleadings, but rather

must produce affirmative evidence setting forth specific facts showing a

genuine issue of material fact exists.  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 256 (1986).  Only disputes over facts that might affect the

outcome of the case under the governing substantive law will properly

preclude summary judgment.  Id. at 248.  Accordingly, "the mere existence

of *some* alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact."  Id.

(emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party,

then summary judgment is not appropriate.  Id.  However, the moving party

is entitled to judgment as a matter of law if the nonmoving party has failed

13

to "make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-588 (1986).  In order to withstand a motion for summary judgment, the nonmoving party "must substantiate his allegations with 'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.' " Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (citing Gregory v. Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992), cert. denied, 507 U.S. 913 (1993)).  "A mere scintilla of evidence is insufficient to avoid summary judgment." Moody, 23 F.3d at 1412.  The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

14

## DISCUSSION

The ADEA at 29 U.S.C. § 623, as applicable to this litigation,

specifically declares that it shall be unlawful for an employer:

> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
>
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age . . . .

While this is a standard prohibition under the ADEA, Congress established

an exception for law enforcement officer positions.  5 U.S.C. § 3307.  That

section provides:

> (d) The head of any agency may determine and fix the minimum and maximum limits of age within which an original appointment may be made to a position as a law enforcement officer . . . , as defined by section 8331(20) . . . of this title.[8]
>
> (e) The head of an agency may determine and fix the maximum age limit for an original appointment to a position as a . . . law

---

[8]Section 8331(20) defines a "law enforcement officer" as "an employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, including an employee engaged in this activity who is transferred to a supervisory or administrative position . . . ."

enforcement officer, as defined by section 8401 . . . (17) . . . of this title.[9]

5 U.S.C. § 3307.

Congress, in 1974, enacted Public Law 93-350, 88 Stat. 355, "a major piece of legislation designed to enhance the 'youth and vigor' of federal law enforcement personnel." Reed v. Reno, 146 F.3d 392, 395 (6th Cir. 1998). "Together with provisions on mandatory retirement[10] and incentives for early retirement,[11] Public law 93-350 provided agencies employing law enforcement officers with authority to set maximum ages for appointment to law enforcement positions." Id. (citing to 5 U.S.C. § 3307(d)).  Based upon this legislative framework it is "well-established that the maximum entry age for law enforcement officers is a valid exception to the ADEA." Id. at 394

---

[9]Section 8401(17)(A) defines the term "law enforcement officer" as applicable to these proceedings to mean: "an employee, the duties of whose position (i) are primarily (I) the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, or (II) the protection of officials of the United States against threats to personal safety; and (ii) are sufficiently rigorous that employment opportunities should be limited to young and physically vigorous individuals, as determined by the Director considering the recommendations of the employing agency . . . ."

[10]Section 8335(b)(1), which provides in part: "[a] law enforcement officer . . . who is otherwise eligible for immediate retirement under § 8336(c) shall be separated from the service on the last day of the month in which [he] becomes 55 years of age or completes 20 years of service if then over that age.

[11]5 U.S.C. § 8339(d) provides an enhanced annuity for federal law enforcement officers retiring under § 8336(c).

(internal references omitted).  <u>See also</u> <u>Stewart v. Smith</u>, 673 F.2d 485 (D.C. Cir. 1982).

Mr. Geenen asserts two grounds arguing defendant is not entitled to summary judgment:

1.    Plaintiff was already a law enforcement officer and his application with BLM/Wyoming would have been a "transfer" and not an "original appointment" subject to the MEA (Docket 68, p. 4); and

2.    If Plaintiff was subject to the MEA, then the BLM/Wyoming has unlawfully denied plaintiff a waiver as has been allowed to others similarly situated.  (Docket 68, p. 6).

These are the same two issues which Judge Battey focused on when he denied defendant's motion to dismiss under Rule 12(b)(6). (Docket 14). Each of those claims will be examined separately to determine if there are material facts in dispute, and if not, whether as a matter of law, defendant is entitled to summary judgment.

<u>PLAINTIFF WAS ALREADY A LAW ENFORCEMENT OFFICER AND HIS APPLICATION WITH BLM/WYOMING WOULD HAVE BEEN A "TRANSFER" AND NOT AN "ORIGINAL APPOINTMENT" SUBJECT TO THE MEA.</u>

The question of what is an "original appointment" subject to 5 U.S.C. §§ 3307(d)-(e) has existed since at least 1989 when the district court for the Southern District of New York issued <u>Francke v. United States Department of the Treasury</u>, 721 F. Supp. 47 (D.C.S.D. NY 1989).  In <u>Francke</u>, plaintiff had been an employee of the United States Customs Service since 1970.  <u>Id.</u>

17

at 48.  At age 50, Mr. Francke applied for a new position which had a MEA
of 34.  <u>Id.</u>  He was denied the position based solely on his age.  <u>Id.</u>  Because
he had been employed within the agency as a law enforcement officer for
three years, while under the age of 35, Mr. Francke argued that § 3307(d)
did not apply to him because that section sets the maximum age for an
original appointment.  <u>Id.</u> at 52.

> In <u>Francke</u>, the court rejected plaintiff's argument observing that:
>
> This is not a sensible reading of the law.  If it were true, then
> simply by holding a law enforcement job while under age 35 an
> employee could guarantee himself the chance to apply for law
> enforcement positions throughout his career.   Such an
> interpretation would create a significant and irrational loophole in
> the statutory scheme of Public Law 93-350.

<u>Id.</u>  "[I]t cannot be disputed that the [department's] desire to maintain a
physically vigorous law enforcement staff is a legitimate government
objective." <u>Id.</u> at 53.  "Second, the maximum hiring age policy of 34 as
implemented by the [department] is rationally related to its legislative
purpose.  In conjunction with the mandatory retirement provisions, the
hiring age policy does keep the average age of law enforcement personnel
low."  <u>Id.</u>  Even though the plaintiff argued he was in "excellent physical
condition and [was] completely able to fulfill the duties of [a law enforcement
officer]," the <u>Francke</u> court concluded that plaintiff must still "abide by a
policy which is on the whole rationally based on its legislative aims."  <u>Id.</u>

18

In <u>Benford v. Frank</u>, 943 F.2d 609 (6th Cir. 1991), the court dealt with an employee who had been employed full time as a police officer but was seeking advancement into a position as postal inspector, another law enforcement officer classification under § 3307(d).  <u>Id.</u> at 610.   Summarily rejecting Mr. Benford's transfer from one law enforcement position to another within the same agency, the court concluded plaintiff's claim was "foreclosed by <u>Patterson v. United States Postal Service</u>, 901 F.2d 927, 930 (11th Cir. 1990), where the court held that 'the policy of refusing to appoint anyone over the age of thirty-five to postal inspector does not violate the ADEA.' "  The court also referenced <u>Stewart v. Smith</u>, 673 F.2d 485 (D.C. Cir. 1982) ("§ 3307(d) is an exception to the ADEA for the maximum age limitations set by agencies for law enforcement officials.").  <u>Benford</u>, 943 F.2d at 613.

In <u>Reed v. Reno</u>, 146 F.3d 392 (6th Cir. 1998), the court faced a challenge to a Department of Justice agency interpretation classifying certain law enforcement positions subject to the MEA of § 3307(e).  While Mr. Geenen argues BLM's interpretation of the term "original appointment" is unreasonable, the Sixth Circuit Court of Appeals in <u>Reed</u> acknowledged that when "an agency is charged with the interpretation of a statute, [the] court must follow the dictates of <u>Chevron, U.S.A. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 . . . (1984)."  <u>Reed</u>, 146 F.3d at 394.

The issue in <u>Reed</u>, in applying <u>Chevron</u> was "if the statute is . . . ambiguous with respect to the specific issues, the question for the court is whether the agency's [position] is based on a permissible construction of the statute." <u>Reed</u>, 146 F.3d at 394-395 (citing <u>Chevron</u>, at 842-843).  "The reviewing court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." <u>Id</u>. (citing <u>CenTra, Inc. v. United States</u>, 953 F.2d 1051, 1055-56 (6th Cir. 1992) (quoting <u>Chevron</u>, 467 U.S. at 843 n. 11)) (internal quotation omitted).

Mr. Geenen argues his interpretation of 5 U.S.C. §§ 3307(d)-(e) is the only interpretation possible because of the declarations found in 5 C.F.R. § 842.802. (Docket 68, p. 4).  In 5 C.F.R. § 842.802, the Office of Personnel Management defines a law enforcement officer, in pertinent part, as being:

> an employee occupying a rigorous position, whose primary duties are the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, or the protection of officials of the United States against threats to personal safety, as provided in 5 U.S.C. 8401(17). Also included in this definition is an employee occupying a rigorous law enforcement officer position who moves to a supervisory or administrative position and meets the conditions of § 842.803(b).

The primary duties of a law enforcement officer, as defined by 5 C.F.R.

§ 842.802, means:

> [T]hose duties of a position that--
>
> (a) Are paramount in influence or weight; that is, constitute the basic reasons for the existence of the position;
>
> (b) Occupy a substantial portion of the individual's working time over a typical work cycle; and
>
> (c) Are assigned on a regular and recurring basis.
> . . . .
> Rigorous position means a position the duties of which are so rigorous that employment opportunities should, as soon as reasonably possible, be limited (through establishment of a maximum entry age and physical qualifications) to young and physically vigorous individuals whose primary duties are--
> . . . .
> (b) Investigating, apprehending, or detaining individuals suspected or convicted of offenses against the criminal laws of the United States or protecting the personal safety of United States officials.
>
> The condition in this definition that employment opportunities be limited does not apply with respect to an employee who moves
>
> directly (i.e., without a break in service exceeding 3 days) from one rigorous law enforcement officer position to another . . . .

Id.

Contrary to Geenen's interpretation, § 842.802 does not make any specific reference to law enforcement officers who move between agencies. Rather, § 842.802 can be read equally to protect a law enforcement officer who moves from position to position within the same agency.

Under 5 U.S.C. §§ 3307(d)-(e), Congress granted the DOI, as the head of the employing agency, the authority to set the MEA.  Reed, 146 F.3d at 396.  DOI has interpreted the phrase "original appointment" to be an appointment originally made into the DOI.  The 1995 DOI Memorandum is that interpretation.  (Docket 59-9).  The February 11, 2002, DOI Personnel Bulletin 02-7 was a further clarification of the application of the MEA within the DOI:

> Individuals age 37 and over may reenter a primary law enforcement . . . position if they are able to complete a total of 20 years of covered and creditable law enforcement . . . service by the mandatory retirement age of 57.  Prior service in covered positions may be subtracted from the applicant's age to determine if he or she meets the MEA.

 (Docket 59-6) (emphasis added).

In DiLuglio v. Cohen, 1998 WL 432168 (E.E.O.C. 1998), the Department of Defense ("DOD") was faced with a situation very similar to that of Mr. Geenen.  In DiLuglio, plaintiff had been employed since the early 1980s, with no break in service, as a criminal investigator with the BLM.  Id. 1998 WL 432168 at *1.  Then in 1991 plaintiff filed an application with the DOD to become a criminal investigator.  Id.  Like Mr. Geenen, Mr. DiLuglio was disqualified for the position solely because of his age.  The EEOC remanded the case to the agency to determine whether Mr. DiLuglio was seeking an "original appointment" as defined by § 3307(d) and whether the age requirement of the agency would apply to him.  Id.

22

On remand, the agency in <u>DiLuglio</u> determined it had disqualified Mr. DiLuglio because he "would have been in an original appointment position at age fifty-five (55) with twenty (20) years of covered service." <u>Id.</u> 1998 WL 432168 at *2 (internal quotation omitted).  On appeal again to the EEOC, Mr. DiLuglio argued the agency failed to determine the meaning of "original appointment" and that he was not applying for an "original appointment" because he was already a criminal investigator with the BLM.  Mr. DiLuglio believed he was merely seeking a promotion which reported to a different federal agency.  <u>Id.</u>

> The agency argued before the EEOC that:
>
> § 3307(d) begins "the head of any agency," and from this language, the agency determined that each individual agency head may establish maximum age requirements for law enforcement positions. The agency maintains . . . , that each individual hired by the agency must be hired into an initial or "original appointment" or otherwise, the authority given to "the head of any agency" as stated in § 3307(d) would be illusory, and older employees from other agencies . . . could escape the age requirements through a loophole which Congress could not have intended.

<u>Id.</u> 1998 WL 432168 at *3.  After reviewing the agency's interpretation and without making a determination itself as to the exact meaning of "original appointment," EEOC concluded "the agency's interpretation of 'original appointment' as meaning an initial hire in the agency was reasonable . . . ." <u>Id.</u>

The E.E.O.C., applying DiLuglio and Francke, reached the same conclusion in Monke v. Donley, 2009 WL 509596 (E.E.O.C. 2009).  Mr. Monke had prior service as an air traffic controller with the Federal Aviation Administration of the Department of Transportation and, after a break in service, applied for an air traffic controller position with the United States Air Force.  Id.  Monke was denied the position based on age.  Once again, the EEOC concluded the agency's treatment as an "original appointee" was a "reasonable interpretation of § 3307(b)."  Id. 2009 WL 509596 at *5.  "[W]e note that agencies are to be afforded a very high degree of deference when it comes to interpreting their own laws and regulations."  Id. 2009 WL 509596 at *6 (citing Chevron).

Under the authority of Chevron, "extreme deference is given to the agency's interpretation of the statute; [the court's] review is limited to determining only whether the agency's [interpretation] is based on a permissible construction of the statute."  Reed, 146 F.3d at 396 (citing Chevron, 467 U.S. at 842-843) (internal citation omitted).  "[T]he appropriate standard of review of the [department's] action is the abuse of discretion standard."  Id.

It is for the Department of Interior to decide whether a first appointment in a DOI position must satisfy the "original appointment" language under 5 U.S.C.    §§ 3307(d)-(e).  Applying the abuse of discretion

24

standard to the DOI's interpretation of "original appointment" and its

application of that definition to Mr. Geenen's job application, the court finds

the DOI made a permissible interpretation of the statute as articulated

within its own policy statements.

<u>IF PLAINTIFF WAS SUBJECT TO THE MEA, THEN THE BLM/WYOMING
HAS UNLAWFULLY DENIED PLAINTIFF A WAIVER AS HAS BEEN
ALLOWED TO OTHERS SIMILARLY SITUATED.</u>

Plaintiff may establish a *prima facie* case of age discrimination in a

failure-to-hire case by showing that "(1) the plaintiff was in the protected age

group (over 40), (2) . . . was otherwise qualified for the position, (3) . . . [he]

was not hired, and (4) the employer hired a younger person to fill the

position." <u>Christensen v. Titan Distribution, Inc.</u>, 481 F.3d 1085, 1095 (8th

Cir. 2007) (internal citation omitted).  Because Plaintiff has offered no

evidence the DOI or BLM was engaged in any direct age discrimination,

he must create "an inference of unlawful discrimination under the

burden-shifting framework established in <u>McDonnell Douglas Corp. v.

Green</u>, 411 U.S. 792 (1973)."  <u>Owens v. U.S. Department of Army</u>, 312 Fed.

Appx. 831, 834, 2009 WL 499701 (8th Cir. 2009) (unpublished) (internal

citations and quotations omitted).

Under that analysis plaintiff must first present a *prima facie* case of

intentional discrimination.  <u>Id.</u> at 834.  If he does so, then the burden shifts

to the DOI to "articulate a legitimate, nondiscriminatory reason for its

action." Id.  If the defendant meets that "minimal burden, [plaintiff] must show that the proffered nondiscriminatory reason is merely a pretext for unlawful discrimination." Id. (citing Putman v. Unity Health Sys., 348 F.3d 732, 735 (8th Cir. 2003)).

Mr. Geenen asserts defendant exercised his discretion in a discriminatory or pretextual fashion in denying plaintiff a waiver of the MEA.  (Docket 68, p. 6).  In resistance to the defendant's Rule 12(b)(6) motion (Docket 7), plaintiff asserted, in essence, that discovery would disclose a number of BLM employees received waivers and that this evidence, once produced, would show that denial of plaintiff's waiver request was a pretext for discrimination based upon age.  (Docket 11, pp. 5-6).  During these summary judgment proceedings, Mr. Geenen points to three individuals who became BLM employees in circumstances similar to plaintiff as the basis for plaintiff's pretext claim.  Those employees are James Moriarty, Rudy Maudlin, and Nicholas LaFazio.  (Docket 68, pp. 7-8).

Plaintiff has the burden to prove that "the compared employees were similarly situated in all relevant respects." Owens, 312 Fed. Appx. at 834 (citing Smith v. Allen Health Sys., Inc., 302 F.3d 827, 835 (8th Cir. 2002) (citing Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994))). "At the pretextual stage of the analysis, 'the test for determining whether employees are similarly situated to a plaintiff is a rigorous one.' " Owens,

26

312 Fed. Appx. at 834 (citing  Johnson v. Univ. of Iowa, 431 F.3d 325, 330
(8th Cir. 2005) (citing Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 853 (8th
Cir. 2005))).  "Accordingly, the ultimate burden falls on [plaintiff] to produce
evidence sufficient to create a genuine issue of material fact regarding
whether [DOI's] proffered nondiscriminatory reason is a pretext for
discrimination."  Rodgers, 417 F.3d at 853.

Mr. Geenen cites Patterson v. United States Postal Service, 901 F.2d
927 (11th Cir. 1990) as authority for his position.  (Docket 68, p. 6).  In
Patterson, the plaintiff claimed that the postal service improperly denied
him a waiver when other similarly situated individuals had been granted
waivers.  Id. at 928.  Age was not a determinative factor in those waivers.[12]
Thus, the Patterson court concluded that "waivers were [not] selectively
denied as a pretext for age discrimination."  Id. at 931.

It is undisputed that at the time of filing his job application with
BLM/Wyoming, Mr. Geenen was 59 years of age.  (Docket 69 #11).
Deducting his years of service (16), resulted in an effective age of 43.  (59-
16=43).  Id.  At the time of his application, plaintiff exceeded the MEA by 22
years.  (Docket 69 #12).

─────────────────────

[12]In settlement of a civil rights case, the Postal Service eliminated the
position of investigator and converted all investigators to inspectors.  A number
of those individuals were beyond the MEA.  The Postal Service also granted a
waiver to individuals who were placed on the registry before age 35 but were
not actually appointed before that birthday.  Patterson, 901 F.3d at 929.

27

It is against this legal and factual backdrop that each of the waivers identified by Mr. Geenen must be examined.

Nicholas LaFazio

At the time of his official appointment, Mr. LaFazio was 37 years 3 months and 10 days old.  He was offered the position prior to his 37th birthday, but his background check was not completed before his 37th birthday.[13]  He was granted a retroactive waiver of the MEA through BLM/California in March of 2007.

Mr. LaFazio was considered by BLM/California to be the best qualified candidate for the position of Field Training Officer ("FTO"), a primary law enforcement position.  (Docket 59-8).  "FTO positions are difficult to recruit and retain due to the extensive and comprehensive law enforcement experience required, as well as the skill and ability to effectively train other officers."  Id.  BLM/California was "attempting to regularize the appointment with the approval of this [retroactive] waiver."  Id.

In 2008, Mr. LaFazio, as a transfer, moved from a BLM/California law enforcement officer position [ranger, FTO] into a position with BLM/Wyoming as part of a special investigations group.  (Docket 70-7;

_____

[13]Plaintiff asserts the waiver was granted to LaFazio because he exceeded the MEA when he was appointed to his law enforcement position. (Docket 69 #45).

28

Miller depo. pp. 18:3-17, 19:6).  He was an employee of DOI at the time he

transferred into the position he now holds with BLM/Wyoming.

There are no material facts in dispute regarding the waiver issued to

Mr. LaFazio.  Rather, it is the interpretation of those facts to which plaintiff

objects.  To suggest that granting a waiver to a DOI employee who was 3

months and 10 days over the MEA is comparable to plaintiff, a non-DOI

federal employee who was 22 years over the MEA, is not a credible

argument.  The only similarity between Mr. Geenen and Mr. LaFazio is that

they were both law enforcement officers when they made their employment

moves.

Plaintiff claims the justification for Mr. LaFazio's waiver (because "FTO

positions are difficult to recruit and retain" (Docket 59-8)) is a ruse to avoid

Mr. LaFazio being compared to Mr. Geenen.  (Docket 68, p. 8).  However,

plaintiff offers no evidence to factually challenge BLM's LaFazio waiver

decision.

Under Fed. R. Civ. P. 56(e)(2):

[A] party opposing summary judgment may not rely merely on
allegations or denials in its own pleadings; rather, its response
must--by affidavit or as otherwise provided in this rule--set out
specific facts showing a genuine issue for trial.  If the opposing
party does not so respond, summary judgment should, if
appropriate, be entered against that party.

Id.  Once the moving party has met its burden, the nonmoving party may

not rest on the allegations or denials in the pleadings, but rather must

produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-257 (1986).  See also Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (the nonmoving party "must substantiate his allegations with 'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.' ") (internal citation omitted).

Mr. LaFazio specifically fit 5 C.F.R. § 842.802 in defining a qualified transfer of a law enforcement officer:

> The condition in this definition that employment opportunities be limited does not apply with respect to an employee who moves directly (i.e., without a break in service exceeding 3 days) from one rigorous law enforcement officer position to another . . . .

Id.  The DOI carried this transfer qualifying provision into its own employment materials.  "The [MEA] requirement does not apply . . . [t]o a DOI employee who moves directly from one rigorous law enforcement . . . position to another."  (Docket 59-10).  Mr. LaFazio was a DOI/BLM employee who was seeking to move within the agency to another branch office.  This is exactly the type of transfer contemplated by the Personnelist and 5 C.F.R. § 842.802.

Contrary to plaintiff's assertion, there is nothing in the regulations which declares that the "no break in service" provision should extend to a federal employee seeking to transfer from a different department of the

30

federal government.  Under <u>Chevron</u>, "extreme deference is given to the agency's interpretation of the [regulation thus, the court's] review is limited to determining only whether the agency's [interpretation] is based on a permissible construction of the [regulation]."  <u>Reed</u>, 146 F.3d at 396 (citing <u>Chevron</u>, 467 U.S. at 842-843) (internal citation omitted).  "[T]he appropriate standard of review of the [department's] action is the abuse of discretion standard."  <u>Id.</u>

It is for the DOI to decide whether the "no break in service" provision of 5 C.F.R. § 842.802 applies solely to intra-departmental transfers or to transfers from other departments.  <u>DiLuglio v. Cohen</u>, 1998 WL 432168 (E.E.O.C. 1998).  Applying the abuse of discretion standard to the DOI's interpretation of "no break in service" and its application of that definition to Mr. Geenen's situation, the court finds that the DOI's decision was based upon a permissible interpretation of the regulation and is consistent with the application of the law articulated within DOI's own policy statements. <u>Reed</u>, <u>supra</u>.  Mr. Geenen has failed to show he was similarly situated to Mr. LaFazio to support a claim that plaintiff's application for a MEA waiver was "selectively denied as a pretext for age discrimination."  <u>Patterson</u>, 901 F.2d at 931.

Rudy Maudlin

Rudy Maudlin was hired by DOI in 1990 and has remained in the employment of the DOI since that time.  Mr. Maudlin was granted a waiver because his age at the time of his hiring in 1990 was 37 years and 6 months.  He was granted a retroactive MEA waiver by DOI pursuant to a request by BLM/Utah in 2008 in accordance with the 2002 Personnel Bulletins.

Like the situation with Mr. LaFazio, it is not a credible argument for plaintiff to assert he is similarly situated to Mr. Maudlin.  Mr. Maudlin has at all times been, and remained, an employee within the DOI/ BLM.  Mr. Geenen failed to show he was similarly situated to Mr. Maudlin or that denial of plaintiff's application was "selectively denied as a pretext for age discrimination."  Patterson, 901 F.2d at 931.

James Moriarty

James Moriarty was initially hired by the Department of Agriculture/Forest Service in 1988.  In 1995 he became a law enforcement officer at the age of 40.  Mr. Moriarty was 50 years old when he was hired by BLM/New Mexico from the DOA in 2006.  Mr. Moriarty worked from 2006 to 2008 in BLM/New Mexico as a criminal investigator, a primary law enforcement position, without a waiver of the MEA.

32

Plaintiff asserts that "in 1995 Moriarty was grandfathered into the Special LE retirement when his position was deemed a primary covered position." (Docket 59-2, p. 2 #3). Mr. Geenen claims that Mr. Moriarty was a member of the "Special Group within the Protected Class." Id. Plaintiff claims, without citation to any authority, that a "waiver is not required for members of the 'Special Group within the Protected Class.'" Id. Thus, plaintiff asserts that their "situations mirror each other exactly." Id. The only difference being, in plaintiff's view, is Mr. Moriarty was granted his MEA and became employed by BLM. Id.

Defendant's statement of undisputed material facts #30 asserts that "DOI does not accept waivers from outside of DOI." (Docket 60). Defendant's statement of fact is based upon the deposition of Michael Gillmore. Id. Mr. Gillmore is currently the supervisory program analyst for the DOI, Office of the Secretary, Office of Human Resources.[14] (Docket 59-13, p. 2).

Mr. Geenen denies this statement of fact. (Docket 69 #30). Plaintiff asserts that simply because Mr. Gillmore testified he had never "seen" the

_____

[14]From 1993 to 1998, Mr. Gillmore was a personnel assistant for the BLM's Firefighter and Law Enforcement Special Retirement program. From 1998 until January of 2004, he was a program analyst for the Firefighter and Law Enforcement Team ("FLERT"). In September of 2004, he was promoted to supervisory program analyst and serves as a consultant to the BLM FLERT program, among other duties. (Docket 59-11, p. 1).

DOI accept a waiver from another department does not mean DOI therefore must have a policy against accepting such waivers.  Id.

Again, under Rule 56(e)(2) and Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), in resisting a motion for summary judgment, plaintiff cannot simply rest upon his denials but must produce affirmative evidence to show a genuine issue of material fact exists.  Speculation and conjecture will not suffice.  Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994).  In his deposition, Mr. Geenen conceded he has no evidence that BLM/Wyoming offers waivers.  (Docket 59-15; Geenen deposition pp. 21:21-25 and 22:1-6).  Defendant asserts there is no evidence that BLM/Wyoming has requested a waiver of the MEA since the reinforcement of DOI policy in 2002.  (Docket 60 #49).

It is an undisputed fact that Mr. Moriarty did not obtain a MEA waiver from DOI/BLM when he transferred from the Department of Agriculture to DOI/BLM/New Mexico in 2006.  This was one year after plaintiff's waiver request and after plaintiff initiated his age discrimination process within DOI/BLM.  To prove discrimination by comparing himself to Mr. Moriarty, plaintiff must show the decision to not require a waiver for Mr. Moriarty but require a waiver for plaintiff was made by the same decision maker.  Betz v. Chertoff, 578 F.3d 929, 934 (8th Cir. 2009) (citing Morgan v. A.G. Edwards & Sons, Inc., 486 F.3d 1034, 1043 (8th Cir. 2007)).  Mr. Geenen also must

34

show that he and Mr. Moriarty were "similarly situated in all relevant respects." Id. (citing Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691-692, (8th Cir. 2002)).

Defendant asserts Mr. Moriarty is not similarly situated because, while he transferred from DOA into DOI, he did not transfer to a position within BLM/Wyoming.  (Docket 76, p. 7).  Rather, Mr. Moriarty transferred into the BLM/New Mexico office, where Mr. Moriarty would not have had the same decision maker as plaintiff.  Id.

It is an undisputed fact that BLM/Wyoming has not requested a MEA waiver since issuance of the Personnel Bulletins by the DOI in 2002. Applying for a MEA waiver is clearly a three-step process.  First, the state agency office of the BLM must decide to seek an age waiver for a law enforcement position.[15]  Second, under Personnel Bulletin 02-7, if the state agency office chooses to consider an individual who is outside of the "age less years of service" calculation, the agency must complete a waiver application and forward the request to the Director of Personnel Policy in the Office of the Secretary, DOI, Washington, D.C.  (Docket 59-6).  Third, the Director of Personnel Policy will either approve or disapprove the MEA waiver after conferring with the Office of Law Enforcement and Security.  Id.

_____

[15]The "age less years of service" calculation is not a part of the MEA waiver analysis, but rather a separate agency application of the FERS law enforcement rules.  See supra, pp. 6-9.

35

From the record it appears BLM/New Mexico may have had a less stringent approach to its application of the policy directives and personnel bulletins of the DOI than did BLM/Wyoming.  Without guessing why BLM/New Mexico made the waiver decision, it is evident that with Mr. Moriarty's age (50) in 2006, he would be subject to the FERS 25-year retirement provisions in the year of his 57th birthday.

Since the Department of Interior's issuance of the 2002 Personnel Bulletins, 02-7 and 03-3, BLM/Wyoming did not make any MEA waiver requests for outside transfers into DOI/BLM/Wyoming.  In 2005, Mr. Geenen was beyond the age limitations set by DOI under 5 U.S.C. § 3307(d). With only 17 years of qualified service, he could not have reached the FERS 25-year retirement provisions by age 57 because he was already 59 years of age.

Plaintiff has not shown that the decision of BLM/Wyoming in adhering to the DOI directives to maintain a young and vigorous workforce is otherwise in violation of federal law.  The ultimate decision maker for a MEA waiver is the Director of Personnel Policy since each state agency decision must be approved by the director at the national level.  The undisputed material facts disclose BLM/Wyoming did not create a pretext for age discrimination in violation of AEDA.  Plaintiff and Mr. Moriarty are not similarly situated individuals.  Betz, 578 F.3d at 934.  The decision of

BLM/Wyoming to not consider MEA waiver requests from outside DOI is a lawful discretionary decision by the agency and  in compliance with applicable federal law.

## CONCLUSION

Defendant has shown through the undisputed material facts that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c)(2). Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment (Docket 58) is granted.

IT IS FURTHER ORDERED that plaintiff's complaint (Docket 1) is dismissed with prejudice.

Dated March 14, 2011.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE